457 So.2d 1008 (1984)
Joseph T. LANCE, et al., Petitioners,
v.
Charles H. WADE, et al., Respondents.
No. 63242.
Supreme Court of Florida.
August 30, 1984.
Rehearing Denied November 15, 1984.
*1009 Karl Beckmeyer, Tavernier, for petitioners.
Jay M. Levy of Hershoff & Levy, and George M. Nachwalter, Miami, for respondents.
OVERTON, Justice.
This is a petition to review a decision of the Third District Court of Appeal reported as Lance v. Wade, 424 So.2d 161 (Fla. 3d DCA 1983), in which the district court held that a class action could be brought on the ground of fraud. We find direct conflict with Avila South Condominium Association, Inc. v. Kappa Corp., 347 So.2d 599 (Fla. 1977), and Osceola Groves v. Wiley, 78 So.2d 700 (Fla. 1955). We have jurisdiction, article V, section 3(b)(3), Florida Constitution, and we quash the decision of the district court. In so doing, we reaffirm our previous decisions in which we held that fraud on individual contracts could not be a basis for a class action. We also find that the respondents have available suitable remedies in the form of individual actions for breach of contract, cancellation and rescission, or specific performance. Accordingly, we remand without prejudice to the respondents' right to institute these types of actions.[1]
The relevant facts reflect that respondents Wade and Herringer were two of approximately 350 purchasers of mobile home lots in Cross Key Waterways in Monroe County. These two lot owners filed a class action against the seller of the lots, Cross Key Waterways, Inc., and its president, Joseph T. Lance, alleging that they had relied to their detriment upon fraudulent representations by the seller contained in the public offering statement, advertising brochures, and contracts for deed, and upon fraudulent representations by the seller's employees. The alleged statements and representations involved assertions that access from the lots to a nearby highway would be provided by means of paved roads constructed in accordance with the specifications of the Monroe County engineer. It was alleged that petitioners knew or should have known that these statements concerning the construction of roads were false and that petitioners had no intention of paving these streets. Further, *1010 respondents alleged that the purchasing parties would not have purchased lots in Cross Key had they known of the misrepresentation. Respondents specifically alleged that the "individual Plaintiffs, as representatives of the class, did in fact rely upon the representations" and that the "representation concerning paved roads and streets was a material representation which was relied upon by the Plaintiffs both individually and as representatives of the class." The primary alleged misrepresentation was contained in a public offering statement which provided, in part, as follows:
Improvements will include installation of a water line in front of each lot, construction of a graded, rolled, water-bonded, oiled and sanded road, an elevation of four feet at the crown of the road, in accordance with county engineering requirements. All improvements will commence with Section One, next Section Three will be improved and lastly Section Two, although the latter two sections may be developed simultaneously if circumstances so dictate. The roads will be installed at the time the lots are filled and graded. Section One will be completed on or before March 31, 1971, Section Three on or before December 31, 1971 and Section Two on or before August 31, 1972. Roads will be maintained by subdivider until maintenance is taken over by the Cross Key Waterways Property Owners Association, Inc.
The evidence reflects that some purchasers did not receive this public offering statement until after they had purchased a lot.
Respondents also asserted that another misrepresentation, allegedly relied upon by some of the owners, was contained in an advertising flyer which stated: "Roads are dedicated and graded to county specifications. They are provided by the subdivider and maintained by the county." Again, the record indicates that some purchasers did not receive this flyer.
The trial court permitted the action to proceed as a class action based on fraud. Following a jury trial, verdicts were returned in the amount of $200,000 compensatory damages and $300,000 punitive damages against the corporate defendant, Cross Key Waterways, Inc.; and $50,000 compensatory damages and $60,000 punitive damages against its president, Lance.
On appeal, the principal issue was whether the trial court had erred in submitting this cause to the jury as a class action sounding in fraud. The Third District Court of Appeal affirmed, interpreting our decision in Frankel v. City of Miami Beach, 340 So.2d 463 (Fla. 1976), as having limited our decision in Osceola Groves. The district court stated that since the three-pronged test established in Frankel had been met, in that the plaintiff class was engaged in a cooperative enterprise, had a joint pecuniary interest, and did not have a choice of remedies which were possibly subject to separate and distinct defenses, the suit was properly submitted as a class action. 424 So.2d at 161. We disagree. The district court has misinterpreted our Frankel decision. We did not, as the district court contends, retreat in that decision from the prohibition of fraud class actions based on separate contracts which was established in Osceola Groves and reaffirmed in Avila. In fact, the complaint in Frankel did not allege fraud. The issue was whether the fraud class action rule adopted in Osceola Groves should be given general application "to class actions wherein fraud has not been alleged." 340 So.2d at 468.
Our decision in Osceola Groves dealt with a situation similar to that presented in the instant case. There, purchasers of individual units of land sought, by class action, damages for the seller's fraudulent misrepresentations. In determining that the purchasers had failed to state a cause of action, we noted that
each of the alleged numerous purchasers of units of land acquired his interest under separate contracts with the defendant and it does not appear that in these contracts was any provision showing a cooperative enterprise or any showing that any purchaser had a pecuniary *1011 interest in any development of lands other than those covered by his own contract.
78 So.2d at 702.
In Avila, which was decided subsequent to Frankel, we reaffirmed Osceola Groves and stated that
fraud claims on separate contracts are inherently diverse, as a matter of law, because "the demands of the various defrauded parties are not only legally distinct, but each depends upon its own facts ... [and] a choice of remedies is ordinarily presented." 78 So.2d at 702 (citing Note, 1938, 114 A.L.R. 1015, 1019).
347 So.2d at 609.[2]
In Frankel this Court dealt with an entirely different issue and factual situation. Frankel involved a class action, brought on behalf of city water consumers, which challenged the effective date of a city ordinance which increased the water rate. In Frankel we were not concerned with a fraud class action based on separate contracts and we did not expressly or inferentially recede from the prohibition against such actions. The distinction between Frankel and Osceola Groves is clear. Where, as in Osceola Groves and the present case, fraud based on separate contracts is alleged, the Frankel test is irrelevant. The elements for actionable fraud are (1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another to act on it; and (4) reliance on the representation to the injury of the other party. In summary, there must be an intentional material misrepresentation upon which the other party relies to his detriment. In a situation such as this, involving multiple contractual sales, each of the parties has his own separate and distinct contract and must make a determination as to which terms are important to him. What one purchaser may rely upon in entering into a contract may not be material to another purchaser. Illustrative of this fact is that, in the instant case, some of the members of the class did not receive the public offering statement prior to their purchase of a lot. These purchasers could not, therefore, have relied upon the asserted fraudulent representation contained in the public offering statement.
We recognize that there has been some criticism of the limitation placed on class actions by our Osceola Groves decision. See, e.g., Avilla, 347 So.2d at 610 (England, J., dissenting); Arnold, Class Actions in Florida  A New Look, 31 U.Fla. L.Rev. 551 (1979). Nevertheless, we adhere to the view that "fraud claims on separate contracts are inherently diverse," Avila, 347 So.2d at 609, and, as a result, we reaffirm the prohibition against fraud class actions based on separate contracts.
We find that the members of this class, having apparently relied on this cause of action, should be entitled to proceed individually without prejudice against the sellers for breach of contract, fraud, specific performance, or rescission. Given the circumstances of this action, we find that the purchasers should not be subject to the defenses of the statute of limitations or laches, providing that their actions are commenced within a reasonable time after the remand of this decision.
For the reasons expressed, we quash the decision of the district court.
It is so ordered.
BOYD, C.J., and ADKINS, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
NOTES
[1] It should be noted that, if the respondents institute individual suits, the suits may, if appropriate, be consolidated under Florida Rule of Civil Procedure 1.270.
[2] Florida Rule of Civil Procedure 1.220, which concerns class actions, was amended in 1980 to bring it in line with modern practice. The current class action rule is based on the federal class action rule, Federal Rule of Civil Procedure 23. See In re Rules of Civil Procedure, 391 So.2d 165 (Fla. 1980). This amendment did not affect the validity of the holdings in Osceola or Avila.